1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Sarah N. Westcot (State Bar No. 264916)
   Annick M. Persinger (State Bar No. 272996)
3  1990 North California Boulevard, Suite 940
   Walnut Creek, CA  94596
4  Telephone: (925) 300-4455
   Facsimile:  (925) 407-2700
5  E-Mail: ltfisher@bursor.com
            swestcot@bursor.com
6          apersinger@bursor.com

7  **BURSOR & FISHER, P.A.**
   Scott A. Bursor (State Bar No. 276006)
8  888 Seventh Avenue
   New York, NY  10019
9  Telephone: (646) 837-7150
   Facsimile:  (212) 989-9163
10 E-Mail: scott@bursor.com

11 *Attorneys for Plaintiffs*

12

13                   UNITED STATES DISTRICT COURT

14                   EASTERN DISTRICT OF CALIFORNIA

15 DEMARIE FERNANDEZ, ALFONSO          Case No. _____
   MENDOZA, and RHONDA STANLEY, on
16 behalf of themselves and those similarly situated,   **CLASS ACTION COMPLAINT**

17                        Plaintiffs,   **JURY TRIAL DEMANDED**
                v.
18
   OBESITY RESEARCH INSTITUTE, LLC,
19 CONTINUITY PRODUCTS, LLC, WAL-MART
   STORES, INC., HENNY DEN UIJL, and
20 BRYAN CORLETT,

21                        Defendants.

22

23

24

25

26

27

28

────────────────────────────────────────

Plaintiffs DeMarie Fernandez, Alfonso Mendoza, and Rhonda Stanley ("Plaintiffs"), by their undersigned attorneys, bring this class action complaint against Obesity Research Institute, LLC ("ORI"), Continuity Products, LLC ("Continuity Products"), Wal-Mart Stores, Inc. ("Walmart"), Henny den Uijl, and Bryan Corlett (collectively, "Defendants").  Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters.

## JURISDICTION

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

## VENUE

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this district, and a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial district.

## NATURE OF THE ACTION

4.      This is a class action lawsuit on behalf of purchasers of Lipozene, which is marketed by the Defendants as a "weight-loss breakthrough" that will "get rid of pounds of body fat" "without a change in lifestyle."  However, Lipozene's primary ingredient is konjac root, which is a form of dietary fiber called glucomannan.  Stated otherwise, Lipozene is a fiber pill that does not "get rid of pounds of body fat."

5.      Lipozene is not a safe or effective treatment for weight control.  Fiber supplements, such as Lipozene, are not absorbed into the bloodstream and do not, by themselves, cause any chemical response in the human body.  Indeed, the U.S. Food and Drug Administration ("FDA")

has never approved any product containing glucomannan for weight loss or appetite suppression. Because it is ineffective for its intended purposes, Lipozene has no value. It is worthless.

6.  Defendants den Uijl and Corlett knew that the product is ineffective for weight loss and intentionally marketed Lipozene with false and misleading representations. In fact, they knowingly used a study with rigged results as part of the product's marketing. Moreover, Defendants den Uijl and Corlett own and have total control over ORI and Continuity Products, which they created for the sole purpose of shielding themselves from liability in their scheme to sell mislabeled and ineffective weight loss products.

7.  And this is not den Uijl or Corlett's first rodeo. ORI and Continuity Products are just two threads in a web of interlinked shell companies, which also operate under the ownership and control of Defendants den Uijl or Corlett for the purpose of fraudulently promoting the sale of worthless supplements: Pounds Lost, LLC; Zylotrim, LLC; Cell Genetics, LLC; Appetrol, LLC; Zodiac Foundation, LLC; Cyvita, LLC; Finance Marketing, LLC; Hdusdu, LLC; Beau Cheveux, LLC; and Dencor Research, LLC. From these interlinked LLCs, Defendants den Uijl and Corlett fraudulently market and promote a slew of so-called dietary and health products, including Lipozene, Cyvita, I-PAK, Excelerene, MetaboUp, Lumanex, Appetrol, Vita 26, Metabo Pro, and Pounds Lost.

8.  Lipozene's labeling and advertising represents that Lipozene (a) will allow users to "LOSE PURE BODY FAT," (b) is "Safe and Effective," (c) "Helps Reduce Weight," (d) "Helps Reduce Body Fat," (e) "78% of weight lost is pure body fat," (f) is "Clinically Proven," (g) is a "weight-loss breakthrough," (h) will "get rid of pounds of body fat," (i) "has no known side effects," (j) "can help you lose weight without a change in lifestyle," (k) "is an all-natural appetite suppressant," (l) "will make you feel full," (m) will allow users to "eat less without feeling hungry," (n) allows "[y]ou [to] eat pizza, burgers, pasta, whatever you normally would," (o) "your body will burn more fat," (p) is "[a] weight control plan that can work even for unmotivated or unhealthy people," (q) is "for almost everyone," "no matter their age, physical condition at the start, or gender," and (r) users do not need "to change their daily lives. It's so easy. Just take Lipozene.

That's it."  Moreover, Lipozene's labeling and advertising depict an animated Lipozene pill *directly* dissolving body fat on contact.  Finally, Lipozene's advertising is replete with false and misleading customer testimonials (hereafter, together with the representations discussed below, the "Express Warranties" or the "Misrepresentations").

9.      Each of the Express Warranties is false or misleading.  Lipozene is not effective for any of these purposes.  Nor is Lipozene suitable or fit for any of these intended purposes.

10.      It gets worse.  On June 17, 2005, Defendants ORI, den Uijl, and Corlett entered into a Stipulated Final Judgment with the Federal Trade Commission ("FTC"), regarding their conduct in marketing other glucomannan-based products.  *See Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (June 17, 2005).  Aside from agreeing to pay $1.5 million in consumer redress, Defendants ORI, den Uijl, and Corlett were "permanently restrained and enjoined" from "manufacturing, labeling, advertising, promot[ing], offering for sale, [selling], or [distributing]" any product that contains "glucomannan … konjac, [or] konjac root" through representations, express or implied, that such product:  "(a) Causes rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity; (b) Enables users to lose as much as 8 pounds or more per month without the need to reduce caloric intake or increase exercise; (c) Works for all users; or (d) Causes substantial weight loss through blocking the absorption of fat or calories."  As discussed herein, Lipozene's package label and advertising make these exact representations.

11.      Plaintiffs are purchasers of Lipozene who assert claims for violation of the Magnuson Moss Warranty Act, for breach of express warranty, breach of the implied warranty of merchantability, for unjust enrichment, for violation of the California Consumers Legal Remedies Act ("CLRA"), for violation of the California Unfair Competition Law ("UCL"), and for violation of the California False Advertising Law ("FAL").

## THE PARTIES

12.      Plaintiff DeMarie Fernandez is a citizen of California, residing in Vacaville, California.  In late 2012, Plaintiff Fernandez purchased Lipozene from a Walmart retail store in Vacaville, California.  Prior to her purchase, Ms. Fernandez reviewed the product's labeling and

1  watched the product's television advertisement, both of which are reproduced below.  *See infra.*

2  The container she purchased represented that Lipozene was "Safe and Effective" and was

3  "Clinically Proven" to "Reduce Weight" and "Reduce Body Fat."  The container also contained an

4  image of a Lipozene pill *directly* dissolving body fat on contact and represented that "78% of

5  weight lost is pure body fat!"  Plaintiff Fernandez saw these representations prior to and at the time

6  of purchase, and understood them as representations and warranties that the product was, in fact,

7  safe and effective for weight loss.  She relied on these representations and warranties in deciding to

8  purchase Lipozene, and these representations and warranties were part of the basis of the bargain, in

9  that she would not have purchased Lipozene if she had known that the product was not, in fact, safe

10  and effective for weight loss.  In reliance on these representations and warranties, she paid a

11  tangible increased cost for Lipozene, which was worth less than represented because it was, in fact,

12  ineffective and worthless.  She also understood that in making the sale, Walmart was acting with the

13  knowledge and approval of the other Defendants and/or as the agent of the other Defendants.  She

14  further understood that the purchase involved a direct transaction between herself and Defendants

15  ORI and Continuity Products, because her purchase came with Defendant ORI and Continuity

16  Product's representations and warranties that the product was, in fact, safe and effective for weight

17  loss.  After several weeks of using Lipozene as directed, Plaintiff Fernandez concluded that the

18  product was ineffective.

19       13.    Plaintiff Alfonso Mendoza is a citizen of California, residing in Covina, California.

20  In February 2013, Plaintiff Mendoza purchased Lipozene through ORI's toll-free number after

21  watching the product's television advertisement, which is reproduced below.  *See infra.*  He

22  purchased three bottles, and a "2 bottle bonus pack," for a total of $134.82 plus $9.95 shipping and

23  handling.  The containers he purchased represented that Lipozene was "Safe and Effective" and was

24  "Clinically Proven" to "Reduce Weight" and "Reduce Body Fat."  The containers also contained an

25  image of a Lipozene pill *directly* dissolving body fat on contact and represented that "78% of

26  weight lost is pure body fat!"  Plaintiff Mendoza saw these representations prior to and at the time

27  of purchase, and understood them as representations and warranties that the product was, in fact,

28

safe and effective for weight loss.  He relied on these representations and warranties in deciding to purchase Lipozene, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased Lipozene if he had known that the product was not, in fact, safe and effective for weight loss.  In reliance on these representations and warranties, he paid a tangible increased cost for Lipozene, which was worth less than represented because it was, in fact, ineffective and worthless.  After several weeks of using Lipozene as directed, Plaintiff Mendoza concluded that the product was ineffective.

14.     Plaintiff Rhonda Stanley is a citizen of California, residing in Dobbins, California.  In late 2012, Plaintiff Stanley purchased a "2 bottle bonus pack" of Lipozene for $19.98 from a Walmart retail store in Marysville, California.  Prior to her purchase, Ms. Stanley reviewed the product's labeling and watched the product's television advertisement, both of which are reproduced below.  *See infra*.  The container she purchased represented that Lipozene was "Safe and Effective" and was "Clinically Proven" to "Reduce Weight" and "Reduce Body Fat."  The container also contained an image of a Lipozene pill *directly* dissolving body fat on contact and represented that "78% of weight lost is pure body fat!"  Plaintiff Stanley saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the product was, in fact, safe and effective for weight loss.  She relied on these representations and warranties in deciding to purchase Lipozene, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased Lipozene if she had known that the product was not, in fact, safe and effective for weight loss.  In reliance on these representations and warranties, she paid a tangible increased cost for Lipozene, which was worth less than represented because it was, in fact, ineffective and worthless.  She also understood that in making the sale, Walmart was acting with the knowledge and approval of the other Defendants and/or as the agent of the other Defendants.  She further understood that the purchase involved a direct transaction between herself and Defendants ORI and Continuity Products, because her purchase came with Defendants ORI and Continuity Product's representations and warranties that the product was, in

fact, safe and effective for weight loss.  After several weeks of using Lipozene as directed, Plaintiff Stanley concluded that the product was ineffective.

15.     Defendant Obesity Research Institute, LLC is a California limited liability company with its principal place of business in Encinitas, California.  ORI is the distributor and seller of Lipozene and participated in creating the product formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing, and advertising.  ORI's activities caused the sale of Lipozene through the Internet and retail venues including club, food, drug, mass market, and health food stores.  ORI endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Lipozene as described herein.

16.     Defendant Continuity Products, LLC is a Delaware limited liability company with its principal place of business in Carlsbad, California.  Continuity Products is the distributor and seller of Lipozene and participated in creating the product formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing, and advertising.  Continuity Product's activities caused the sale of Lipozene through the Internet and retail venues including club, food, drug, mass market, and health food stores.  Continuity Products endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Lipozene as described herein.

17.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas.  Walmart is a multinational retail corporation that runs chains of large discount department stores and warehouse stores.  Walmart has 8,500 stores in 15 countries, under 55 different names.  Walmart is the largest retailer in the world and is the world's third-largest public corporation.  To effectuate the Defendants' joint plan to market Lipozene as described herein, Walmart (1) displayed Lipozene and its false labels on its store shelves and website, (2) reviewed and approved the advertising materials promoting the sale of Lipozene, (3) sold Lipozene to end users, and (4) endorsed, adopted, and utilized the Express Warranties and Misrepresentations.

18.     Defendant Henny den Uijl is a citizen of California.  Defendant den Uijl is a Managing Member of ORI, is the registered Agent for Service of Process, and has a 50% ownership interest in the company.  Defendant den Uijl is also an Owner of Continuity Products.  At all times relevant to this Complaint, acting individually or in concert with the other Defendants, Defendant den Uijl has participated in creating the Lipozene's formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing, and advertising.  Defendant den Uijl's activities caused the sale of Lipozene through the Internet and retail venues including club, food, drug, mass market, and health food stores.  Defendant den Uijl endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Lipozene as described herein.  Defendant den Uijl transacts business in this district and throughout the United States.

19.     Defendant Bryan Corlett is a citizen of California.  Defendant Corlett is a Managing Member of ORI and has a 50% ownership interest in the company.  Defendant Corlett is also a Managing Member, President, and Owner of Continuity Products.  At all times relevant to this Complaint, acting individually or in concert with the other Defendants, Defendant Corlett has participated in creating the Lipozene's formulation, dosage form, delivery system, branding, packaging and design, logistics and distribution, marketing, and advertising.  Defendant Corlett's activities caused the sale of Lipozene through the Internet and retail venues including club, food, drug, mass market, and health food stores.  Defendant Corlett endorsed, adopted, and utilized the Express Warranties and Misrepresentations to effectuate the Defendants' joint plan to market Lipozene as described herein.  Defendant Corlett transacts business in this district and throughout the United States.

20.     Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

1

## FACTS COMMON TO ALL CLAIMS

2

**A.      Lipozene's Formulation**

3

21.      The primary ingredient in Lipozene is konjac root, which is a type of soluble fiber

4

called glucomannan.  Lipozene contains no other ingredients, aside from common additives like

5

gelatin, an anti-caking agent, and dyes.

6

22.      Because Lipozene's only real ingredient is soluble fiber, it does not behave like other

7

medications or dietary supplements.  Soluble fiber – like Lipozene – is not absorbed into the

8

bloodstream.  Lipozene does not, in itself, cause any chemical response in the human body.

9

23.      Taking soluble fiber, such as Lipozene, does not cause a material loss of body fat in

10

a person who does not reduce calories or increase exercise.  Moreover, taking soluble fiber does not

11

result in the loss of body fat, as opposed to other types of weight loss such as loss of muscle tissue

12

or retained water.

13

24.      Konjac root is inexpensive and can be purchased for a small percentage of the cost of

14

Lipozene.  Defendants charge a heavy price premium over the actual cost of konjac root.

15

**B.      In 2005, Defendants ORI, den Uijl, and Corlett Settled With The FTC**

16

**Regarding Their Advertising Of Glucomannan-Based Products**

17

25.      On June 14, 2005, the FTC filed suit against Defendants ORI, den Uijl, and Corlett

18

regarding the advertising and sales of Propolene, which "purportedly contain[s] glucomannan as

19

[its] primary ingredient."  *See Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (S.D.

20

Cal. June 14, 2005) (Complaint).  In its suit, the FTC alleged that the defendants "primarily

21

advertise[d] and offer[ed] [Propolene] for sale through a 30-minute television infomercial and an

22

Internet website, www.fiberthin.com."

23

26.      Defendants' television commercial for Propolene included the representation that

24

"[d]ramatic weight loss can now be achieved without diet or exercise."  Additionally, the

25

commercial included testimonials, including:  "It definitely works by itself because I know I didn't

26

do anything different and I took it and I lost weight;" "It was just very easy.  You just take these

27

pills about 20 minutes before you eat and the pounds just fell off;" and "You don't change your life,

28

all you do is take a pill."  As will be discussed below, *see infra*, Defendants' marketing and sales of Lipozene includes these same representations.

27.     Defendants' website for Propolene included representations that "Propolene is effective," "It's simple, just take it before meals," "Safely Reduces Hunger," and "Decreases fat without Dieting!"  The website further explained that "Propolene™ creates a viscous fiber mass, which is 100% natural soluble dietary fiber and provides a feeling of satiety.  Propolene™ encapsulates some of the fat in the foods you eat and prevents its absorption by digestive tract (sic), resulting in reduced caloric intake from fat and adding healthy fiber to your diet."  As will be discussed below, *see infra*, Defendants' marketing and sales of Lipozene includes these same representations.

28.     On June 17, 2005, Defendants ORI, den Uijl, and Corlett settled with the FTC regarding its advertising of glucomannan-based products.  The settlement included $1.5 million in consumer redress and several conduct prohibitions.

29.     First, Defendants ORI, den Uijl, and Corlett agreed not to make the following claims for any product containing "glucomannan, … konjac, [or] konjac root:"

    A.     Causes rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity;

    B.     Enables users to lose as much as 8 pounds or more per month without the need to reduce caloric intake or increase exercise;

    C.     Works for all users; or

    D.     Causes substantial weight loss through blocking the absorption of fat or calories.

These conduct prohibitions cover Lipozene because Lipozene contains glucomannan, konjac, and konjac root.  However, Defendants' marketing and sales of Lipozene include these same misrepresentations.  For more detail, see the chart below, which (non-exclusively) illustrates the agreement:

| Prohibited Representation Per 2005 FTC Settlement | Current Representation Used In Lipozene's Advertising | Source |
|---|---|---|
| Causes rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity. | A picture of an animated Lipozene pill *directly* dissolving body fat on contact. | Label, television commercial, website (lipozene.com). |
| | "What's even more amazing is that people were not asked to change their daily lives.  Just take Lipozene, that's it." | Television commercial. |
| | "Lipozene is safe and effective and can help you lose weight without a change in lifestyle." | Website. |
| | "You can eat pizza, burgers, pasta, whatever you normally would." | Website. |
| | "**[Y]our body will burn more fat.**" (emphasis in original) | Website. |
| Works for all users. | "People who were pounds overweight have become as thin as they've always wanted by using Lipozene, no matter their age, physical condition at the start, or gender – so why not join them? … **It's for almost everyone** - Men and women, exercisers and couch potatoes, and people slightly or severely overweight can benefit from Lipozene." (emphasis in original) | Website. |
| | "Lipozene will help you lose the weight **without** starving yourself, **_guaranteed_**!" (emphasis in original) | Website. |
| | Lipozene "has helped millions of Americans lose weight and pure body fat." | Website. |
| | Lipozene "guarantees you will lose weight and body fat." | Website. |
| Causes substantial weight loss through blocking the absorption of fat or calories. | "Lipozene turns that dietary fiber into a sponge that makes you feel full, thus reducing your caloric intake." | Website. |

30. <u>Second</u>, Defendants ORI, den Uijl, and Corlett agreed not to make the following

claims for *any* "weight loss product, dietary supplement, food, drug, or device,"

    A.    That such product or service causes weight loss;

B.    That such product or service enables users to lose weight or fat, or any
specific amount of weight or fat, without the need to reduce caloric intake
or increase physical activity;

C.    That such product or service blocks the absorption of fat or calories or
increases metabolism; or

D.    About the health-related benefits, performance, efficacy, safety, or side
effects of such product or service,

"unless the representation is true, non-misleading, and, at the time it is made, [Defendants ORI, den
Uijl, and Corlett] possess and rely upon competent and reliable scientific evidence that substantiates
the representation."  However, Defendants' marketing and sales of Lipozene include these same
misrepresentations.  For more detail, see the chart below, which (non-exclusively) illustrates the
agreement:

| Prohibited Representation Per 2005 FTC Settlement | Current Representation Used In Lipozene's Advertising | Source |
|---|---|---|
| That such product or service causes weight loss. | "LOSE PURE BODY FAT." | Label. |
| | "Helps Reduce Weight." | Label. |
| | "Helps Reduce Body Fat." | Label. |
| That such product or service enables users to lose weight or fat, or any specific amount of weight or fat, without the need to reduce caloric intake or increase physical activity. | A picture of an animated Lipozene pill *directly* dissolving body fat on contact. | Label, television commercial, website. |
| | "What's even more amazing is that people were not asked to change their daily lives.  Just take Lipozene, that's it." | Television commercial. |
| | "Lipozene is safe and effective and can help you lose weight without a change in lifestyle." | Website. |
| | "You can eat pizza, burgers, pasta, whatever you normally would." | Website. |
| | "**[Y]our body will burn more fat.**" (emphasis in original) | Website. |

CLASS ACTION COMPLAINT
11

| Prohibited Representation Per 2005 FTC Settlement | Current Representation Used In Lipozene's Advertising | Source |
|---|---|---|
| That such product or service blocks the absorption of fat or calories or increases metabolism. | "Lipozene turns that dietary fiber into a sponge that makes you feel full, thus reducing your caloric intake." | Website. |
| About the health-related benefits, performance, efficacy, safety, or side effects of such product or service. | "Safe and Effective." | Label. |
| | "The Obesity Research Institute has found the solution.  It's called Lipozene.  Lipozene is clinically proven to help reduce your body fat and weight." | Television commercial. |
| | "Lipozene has no known side effects when taken as directed." | Website. |
| | Glucomannan products, like Lipozene, will "alleviat[e] constipation," "reduc[e] cholesterol," and "regulat[e] blood sugar." | Website. |
| | "Lipozene doesn't just help you lose weight, if you're not regular, Lipozene can help you with that too." | Website. |

31.     Third, Defendants ORI, den Uijl, and Corlett agreed that in connection with the "manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution" of any "weight loss product, dietary supplement, food, drug, or device," that it would not "misrepresent, in any manner, directly or by implication, the existence, contents, validity, results, conclusions, or interpretations of any test or study."  As will be discussed in the next subsection below, *see infra*, Defendants misrepresented the validity, results, conclusion, and interpretation of its research study.

C.      **Lipozene's False And Misleading Study**

32.     Defendants base their marketing and advertising on an 8-week "major university double-blind study," where participants supposedly lost an average of 3.86 pounds.  Defendants' study involved 83 total participants, of whom 66 were women and 17 were men.  Presumably, the study participants were split 50-50 into active and placebo groups.  Of these participants, 80 remained at the end of the study.

33.     Defendants' study is biased, unreliable, and misleading.  No competent scientist or researcher would rely on this study.  Moreover, Defendants' study actually _disproves_ the efficacy of Lipozene.

**Defendants' Study Is Rigged And Defective, And It Disproves The Efficacy Of Lipozene**

34.     The data from Defendants' study shows _no clinically-significant difference_ between the two treatment groups with respect to all the response variables reported.  That is, the active group showed no difference in weight loss over the placebo group.

35.     To arrive at Defendants' desired conclusion (_i.e.,_ that Lipozene is effective for weight loss), the study results were rigged by dividing the participants into ad hoc subgroups, which were established post-randomization.  For example, when tallying the final results, investigators only considered participants who met an arbitrary level of study compliance – which only left 16 actives and 18 placebos – thereby disregarding the results of 46 participants who did not experience weight loss from using Lipozene.

36.     This division into ad hoc subgroups introduces serious inaccuracies and deficiencies into the testing.  For example, one effect is that the participants in the active group differed from the placebo group, even with respect to baseline variables.

37.     Additionally, this division into ad hoc subgroups is abnormal, unorthodox, and creates selection bias.  In a conventional study, investigators would instead perform an intention-to-treat ("ITT") analysis, whereby they would analyze _all_ randomized patients in the groups they were assigned, by controlling for adherence with the entry criteria, treatment received, and subsequent withdrawal or deviation from the protocol.

**Defendants' Study Involved Abnormally High Compliance Issues**

38.     Defendants' study also involved severe compliance issues of the participants with respect to variables for time and amount.  For example, the compliance rates with respect to time are about 50% for each treatment group, and the compliance rates for amount are 66% and 76%.  For both time and amount, the compliance rates are only 42%.  This rate of noncompliance is unusually high.

39.     These compliance issues mean that Defendants' results cannot be generalized to the general population, because noncompliance with respect to time and amount introduces individualized variables that limit the statistical inferences that can be drawn and because the participants who complied are too few to represent the general population.  .

40.     Furthermore, Defendants' study contains no discussion between gender and compliance.  Since the study involved only 17 males, few men, if any, were part of Defendants' ad hoc subgroup of fully compliant subjects.  Thus, Defendants' study cannot be generalized to male populations.

### Defendants Failed To Properly Adjust Their Results For Errors

41.     Conventional studies mitigate testing problems with a so-called Type I error rate adjustment (*e.g.,* using a Bonferroni adjustment).  Defendants' study did not do so.  Defendants' rigged results would become clinically insignificant if a reasonable error rate is set and this standard procedure is followed.

42.     Defendants knew the study was rigged.  Thus, they knew that the Misrepresentations used to market Lipozene were false and misleading.

### D.     Lipozene's False And Misleading Name

43.     The root word in the trade name, Lipozene, or *lipo*, derives from the Greek word *lipos*, which means fat (*e.g.,* liposuction and lipoprotein).

44.     Defendants' use of *lipo* as part of its trade name for Lipozene is to expressly or impliedly represent to the public that Lipozene blocks the absorption of fat, causing substantial weight loss.  Defendants' use of *lipo* is also for the purpose of expressly or impliedly reinforcing Defendants' other express claims that the product is "clinically proven to reduce body fat" and that "78% of each pound lost" is "pure body fat."

45.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**E.      Lipozene's False And Misleading Label**

46.      The front of the Lipozene package identifies the product as "MAXIMUM STRENGTH Lipozene (Amorphophallus konjac)."  The package further states that the product contains "1500mg per dose."

47.      Additionally, the front of the package contains the representation "LOSE PURE BODY FAT."  Underneath, the package states:  "Clinically Proven," "Helps Reduce Weight," "Helps Reduce Body Fat," and "Safe and Effective."

48.      Moreover, the front of the package contains a gold medal with the text "Obesity Research Institute Product Of Excellence" and "Over 10 Million Bottles Sold."



49.      One side of the package contains the text:  "Clinical study proves: 78% of weight lost is pure body fat!"

50.      The back of the package contains the same representations that appear on the front. In addition, it includes a picture of an animated Lipozene pill *directly* dissolving body fat on contact:

1
2
3
4
5
6
7
8



51.     Each bottle of Lipozene repeats the same representations that appear on the front of

9
the package.

10
11
12
13
14
15
16
17
18
19
20
21



22
52.     Defendants' false and misleading claims are in willful and wanton disregard of the

23
interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

24
**F.      Lipozene's False And Misleading Commercial**

25
53.     Defendants are currently airing the Lipozene Commercial, a television advertisement

26
for Lipozene that makes false and misleading claims about the product's safety and efficacy.  The

27
Lipozene Commercial regularly airs on major networks.

28

54.     The Lipozene Commercial begins with an animated model of a human body.  An announcer asks, "Do you have too much body fat?"



55.     The announcer continues, "It tends to accumulate on the stomach, hips, and thighs. Body fat is unattractive and extremely hard to get rid of."

56.     A spokesperson appears and asks:  "Are you struggling to lose weight?  Does it seem no matter what you do, you just can't get rid of excess body fat?"



57.     The announcer continues:  "Body fat builds over our midsection, on top of the muscle underneath the skin, and over the years it gets worse.  Body fat increases from having kids, stress at work, lack of exercise, and poor diet."

1
2
3
4
5
6
7
8
9



10   58.      The spokesperson reappears and continues:  "The Obesity Research Institute has

11  found the solution.  It's called Lipozene.  Lipozene is clinically proven to help reduce your body fat

12  and weight.  And, in order to provide awareness about this weight-loss breakthrough, the company

13  is letting people try Lipozene risk-free for thirty days."

14
15
16



17
18
19
20
21
22

23   59.      The announcer continues:  "Lipozene is so powerful that it is clinically proven to

24  help you lose pure body fat."  The Lipozene Commercial then depicts an animated pill *directly*

25  dissolving body fat on contact.

26
27
28



60.     The announcer continues:  "In fact, a recent major university double-blind study showed that not only did participants lose weight, but 78% of each pound lost was pure body fat."



61.     The spokesperson reappears and concludes:  "What's even more amazing is that people were not asked to change their daily lives.  Just take Lipozene, that's it.  If you're ready to get rid of pounds of body fat, then call the number on your screen right now.  Lipozene is worth the price because Lipozene is clinically proven to work."

62.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**G.      Lipozene's False And Misleading Websites**

*http://Lipozene.com/*

63.      Defendants advertise Lipozene at http://lipozene.com/.  The website contains information regarding the purported benefits of Lipozene.

64.      The front page of http://lipozene.com/ contains a section that plays the Lipozene Commercial in its entirety.  *See supra.*

65.      The front page represents that Lipozene is "Clinically Proven" and "Safe and Effective" to "Reduce Weight" and "Reduce Body Fat."  It further represents:  "Lipozene is a natural weight loss supplement that is clinically proven to help you lose weight and pure body fat. Lipozene is safe and effective and can help you lose weight without a change in lifestyle.  Lipozene is not a pharmaceutical drug and is available without a prescription."

66.      The front page also represents:  "Lipozene's active ingredient, Glucomannan, is safe and effective for weight loss and body fat loss;" "Lipozene has no known side effects when taken as directed;" Lipozene "has helped millions of Americans lose weight and pure body fat;" and "Lipozene guarantees you will lose weight and body fat!"

67.      The front page explains that, "You simply take two Lipozene capsules thirty minutes before each meal.  That's it.  Lipozene creates a dietary fiber gel in your stomach that makes you feel full so you are able to eat less without feeling hungry."

68.      The front page further represents that glucomannan-based products "ha[ve] been used to treat constipation, obesity, high cholesterol and type 2 diabetes for centuries."

69.      http://www.lipozene.com/ingredients/ represents that glucomannan products, like Lipozene, will "alleviat[e] constipation," "reduc[e] cholesterol," and "regulat[e] blood sugar."

70.      http://www.lipozene.com/faqs/ represents that Lipozene is "natural," "guarantees you will lose weight and body fat," and "In a double-blind placebo controlled clinical study, not only did participants lose weight, but 78 percent of each pound lost was pure body fat.  What's even more amazing, is participants were not asked to change their daily lives."

71.     http://www.lipozene.com/is/safe/ represents that "Lipozene turns that dietary fiber into a sponge that makes you feel full, thus reducing your caloric intake…  [T]he capsule takes up room in your stomach that you would have otherwise filled with more food, and you feel full, faster. It's not rocket science…"

72.     http://www.lipozene.com/is/safe/ also contains several customer testimonials: "Latoya Lost 36 lbs," "Javana Lost 35 lbs," and "Danielle Lost 15 lbs."  However, none of the self-purported customers in the testimonials are doctors.  None are physician's assistants.  None are nurses.  None have any training, education, or experience relevant to the treatment of obesity or its symptoms.  None have any training, education, or experience relevant to the development of drugs or dietary supplements.  None has ever held a job in any of these fields.

73.     http://www.lipozene.com/easy/ represents that Lipozene "is nature's appetite suppressant" because "a gel layer forms made of healthy, calorie-neutral dietary fiber.  Then you are free to eat what you want.  It fills up your stomach before your meal, leaving you feeling full faster and helping you to eat less."  The page further represents that Lipozene is "[a] weight control plan that can work even for unmotivated or unhealthy people" and "won't leave you hungry."

74.     http://www.lipozene.com/loseinches/ represents that "You can eat pizza, burgers, pasta, whatever you normally would," and "Lipozene will help you lose the weight **without** starving yourself, **<u>guaranteed</u>**!"

75.     http://www.lipozene.com/is/forwomen/ represents that Lipozene "works by expanding in your stomach during your meal, taking up space that you would otherwise fill with more food.  You'll feel full sooner, and you'll find that you can stop eating and make it to the next meal comfortably…  It's easy, but it's not too easy to be true.  The simplicity of Lipozene is an important factor in your weight loss success...  Lipozene is a safe, easy weight loss plan that works equally well for women and men."

76.     http://www.lipozene.com/is/formen/ represents that:  "You don't have to count calories or eat bland, disappointing meals.  In fact, you don't have to do anything different than you usually do."  It further represents that:  "[Lipozene is] made from a natural extract from the konjac

root called glucomannan – a great source of dietary fiber.  It works by expanding in your stomach during your meal, taking up space that you would otherwise fill with more food.  You'll feel full sooner, and you'll find that you can stop eating and make it to the next meal comfortably.  So, if you just take two capsules with at least 8oz of water before each meal, you'll take in fewer calories each day, and you won't even miss them!  Your body will naturally burn fat to make up the difference…  If you're sick of being winded by the time you reach the top of the stairs, sweating more than your friends on the field, or having trouble keeping up with your kids, Lipozene is for you."

77.     http://www.lipozene.com/is/formen/ also contains several customer testimonials: "'This works for me, I like it.  I lost 8 pounds in 2 weeks.' -Zavier, West Haverstraw, New York;" "'It cut my hunger by more then half.  Then I lost about 15 lbs in a month.' -Jack, San Marcos, California;" and "'It took Lipozene to get me past that threshold of fat loss I thought I'd never experience.' -Lee, Miami, Florida."  However, none of the self-purported customers in the testimonials are doctors.  None are physician's assistants.  None are nurses.  None have any training, education, or experience relevant to the treatment of obesity or its symptoms.  None have any training, education, or experience relevant to the development of drugs or dietary supplements.  None has ever held a job in any of these fields.

78.     http://www.lipozene.com/reducefat/ represents that "[O]ur customers regularly write to us to say that they lost a noticeable amount of weight and fat.  People who were pounds overweight have become as thin as they've always wanted by using Lipozene, no matter their age, physical condition at the start, or gender – so why not join them? … **It's for almost everyone** - Men and women, exercisers and couch potatoes, and people slightly or severely overweight can benefit from Lipozene." (emphasis in original).

79.     http://www.lipozene.com/caloricintake/ represents that "**your body will burn more fat**" (emphasis in original).

80.     http://www.lipozene.com/glucomannan/ represents that "Lipozene doesn't just help you lose weight, if you're not regular, Lipozene can help you with that too.  Glucomannan has been proven to be effective in maintaining regular bowels."

81.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

***http://TryLipozene.com/***

82.     Defendants also advertise Lipozene on an affiliated site, http://trylipozene.com/, which contains similar representations as http://lipozene.com/ and numerous hyperlinks to http://lipozene.com/.

83.     Both websites are owned and operated by ORI.  Both contain a copyright notice that states, "Copyright © 2012 Obesity Research Institute LLC."  Both have similar layouts.  Both have similar graphics.  And both contain hyperlinks to purchase Lipozene directly from ORI.

84.     http://trylipozene.com/ represents:  "Lipozene creates a dietary fiber sponge that makes you feel full, thus reducing your caloric intake.  You simply take Lipozene thirty minutes before your meal, the capsule takes up room in your stomach that you would have otherwise filled with more food, and you feel full, faster.  It's not rocket science."

85.     http://trylipozene.com/ contains several customer testimonials:  "Latoya Lost 36lbs. 'I'm almost back down to my high school weight, so I'm really lovin' that;'" "Dan Lost 35lbs. 'People who I haven't seen in a while don't even recognize me;'" and "Danielle Lost 15lbs.  'I lost 15lbs, I lost 7 inches off my waist, I lost 2 dress sizes, and I feel amazing.'"  However, none of the self-purported customers in the testimonials are doctors.  None are physician's assistants.  None are nurses.  None have any training, education, or experience relevant to the treatment of obesity or its symptoms.  None have any training, education, or experience relevant to the development of drugs or dietary supplements.  None has ever held a job in any of these fields.

86.     Moreover, http://trylipozene.com/specialoffer/ represents:  "For your end, simply take two pills 30 minutes before each meal with at least 8 ounces of water.  From there, Lipozene takes over; the fiber expands in your stomach, partially 'filling you up,' so that when you go to eat

your next meal, you don't need to eat as much to feel full and satisfied...  In a nutshell, Lipozene is an all-natural appetite suppressant...  **[T]here are no known side-effects when taken as directed**...  We guarantee you'll lose weight, and you'll **never** have to worry about feeling jittery like with so many other diet supplements…" (emphasis in original).

87.     Furthermore, http://trylipozene.com/specialoffer/ represents:  "Because Lipozene works by partially filling you up before you eat, we know you'll lose weight even if you hate dieting, and can't exercise.  If you can watch what you eat and workout occasionally, the supplement will help you meet your goals even quicker; But extra effort on your part is optional, not required, and you'll **STILL** lose weight.  Guaranteed." (emphasis in original).

88.     Finally, http://trylipozene.com/specialoffer/ depicts an animated Lipozene pill *directly* dissolving body fat on contact:



89.     Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**H.     Walmart's False And Misleading Advertising**

90.     Walmart advertises Lipozene on the Internet at http://www.walmart.com/ip/Lipozene-Maximum-Strength-Fat-Loss-Supplement-30ct-2-Pack/10451946.

91.     This page contains Walmart's logo and a picture of a package of Lipozene.  When a visitor hovers his or her mouse over the Lipozene package, Walmart enlarges the photo so the visitor can view the representations on the product's label.  These representations include: "Clinically Proven," "Helps Reduce Weight," "Helps Reduce Body Fat," "Safe & Effective," and "78% of weight lost is pure body fat!"

92.     Additionally, Walmart represents that:  "Lipozene Maximum Strength Fat Loss Supplement can help you reduce body fat, so that you can meet your health and fitness goals when it comes to your weight.  This fat burning supplement contains Glucomannan, an all-natural ingredient that helps you to feel full.  This safe weight loss supplement has no known allergens and it won't make you feel jittery or elevate your heart rate… Lipozene Maximum Strength Fat Loss Supplement will make you feel full, so you'll eat less without feeling hungry.  This fat burning supplement is the safe and effective way to reduce body and lose the weight you have been trying to lose."

93.     Walmart further represents that:  "Lipozene is maximum strength," "This weight loss supplement is safe and effective," "Helps reduce weight," and "Helps reduce body fat."

94.     Walmart's false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**I.     Defendants' False And Misleading Video Testimonials**

95.     Defendants or their marketing agents maintain two "channels" on the popular video-sharing website YouTube, located at http://www.youtube.com/user/trylipozene/ and http://www.youtube.com/user/LipozeneWorks/.  These channels contain several self-purported customer testimonials, which link to http://lipozene.com or http://trylipozene.com/specialoffer/.

96.     None of the self-purported customers in the video testimonials are doctors.  None are physician's assistants.  None are nurses.  None have any training, education, or experience relevant to the treatment of obesity or its symptoms.  None have any training, education, or experience relevant to the development of drugs or dietary supplements.  None has ever held a job in any of these fields.  One video testimonial, entitled "Lipozene Success Story - Real User Javana" depicts a

woman stating:  "I lost 35 pounds in ten weeks using Lipozene…  I've tried everything with my weight.  I've tried fad diets, I've tried everything.  You name it, I've tried it…  Lipozene helped me by suppressing my appetite…  It's really a great product for people who is looking for that extra supplement but don't want to damage your body or put nothing harmful into it.  It's really good for that, you know.  Like I said, all natural, right?  You pop one, two of these, you take some water, you wait thirty minutes, and then you eat.  And when you eat, you get this secure feeling that you're not starving.  So, that's what I think really helped me, because I didn't feel like I was starving when I took the product."

98.   Another video testimonial depicts a man identified as "Robert S." who states:  "It's so simple to do.  You just take a couple pills before you eat, and it basically fills you up so you're not eating as much as you normally do.  But I liked it because I could eat anything.  I didn't have to go to a weird diet or, you know, measure my food.  I ate what I wanted, and I lost weight.  It's amazing because I didn't change anything or eating habits…  It's just a simple, simple pill or way to lose weight.  And you don't think about it...  It's just something that you take, and it controls your weight loss…  I was just taking this pill, and I was losing weight…  With these other diet programs you gotta measure and work out…  It's a no-brainer."

98.   Another video testimonial depicts a woman identified as "Narda L." who states:  "It's a miracle, I swear it is.  You just can't do it on your own, you know you can't.  You get to the point where your appetite changes, and you're losing your weight, and you feel good about yourself.  I'm telling you, it's a miracle, yes it is.  I am truly grateful to Lipozene."

99.   Another video testimonial depicts a woman identified as "Barb K." who states:  "I was watching, TV wearing sweat pants of course, and I saw this ad, 'If you want to lose weight, try Lipozene.'  And it talked about losing body fat.  It wasn't just about just losing weight, but losing body fat…  And I thought, boy, if I can lose body fat and weight that's great…  Lipozene for me would be a miracle.  Some people struggle dieting their entire life, and to me, if you just would try Lipozene you would see results."

100.    Another video testimonial, entitled "Try Lipozene and Lose Weight - Guaranteed!" depicts a woman stating:  "I lost fifteen pounds.  I lost seven inches off of my waist, and I lost two dress sizes, and I feel amazing."  A logo is displayed next to her with the text "Lost 15 Pounds In Twelve Weeks."  A young man then says:  "People who I haven't seen in a while don't even recognize me."  A logo is displayed next to him with the text "Lost 35 Pounds In Twelve Months."  Another woman says:  "I'm almost back down to my high school weight, and I'm really loving that."  A logo is displayed next to her with the text "Lost 36 Pounds In Five Months."  Finally, the testimonial displays the photo of a woman named "Ana" with the text "Lost 90 Lbs in 12 months."

101.    Defendants' false and misleading claims are in willful and wanton disregard of the interests of the consuming public, and they constitute a knowing attempt to deceive consumers.

**J.    Lipozene Is Illegally Distributed And Misbranded Under Federal Law**

102.    Under section 201(g)(1)(B) of the Food, Drug & Cosmetic Act (FDCA), 21 U.S.C. § 321(g)(1)(B), articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease are drugs.  Under § 321(g)(1)(C), articles intended to affect the structure or any function of the body of man are also classified as drugs.  Lipozene includes labeling suggesting the use of the product for weight control.  Lipozene is therefore a "drug" as defined by 21 U.S.C. § 321(g)(1)(B) and (C).

103.    Lipozene falls with the definition of a "new drug" because it "is not generally recognized among experts … as safe and effective for use under the condition prescribed, recommended, or suggested."  21 U.S.C. § 321(p)(1).  Thus, without FDA approval, it is illegal to distribute Lipozene in interstate commerce.  21 U.S.C. § 355(a).

104.    Similarly, federal law prohibits marketers of dietary supplements from making any claim suggesting use of the supplement for the diagnosis, mitigation, treatment or cure of a disease unless the claim is specifically authorized by an FDA finding that there is "significant scientific agreement" to support the claim, or the claim is based on "authoritative statements" from certain federal scientific bodies, such as NIH and the National Academy of Sciences.  *See* Dietary Supplement Health Education Act ("DSHEA"), 21 U.S.C. § 343(r)(3).

105.     Federal law allows for statements of nutritional support referring to representations about a dietary supplement's effect on the structure or function of the body for maintenance of good health and nutrition – so-called structure/function claims – without FDA authorization.  But structure/function claims are allowed only if the manufacturer has substantiation that the claim is truthful and not misleading, and also prominently displays the DSHEA disclaimer:  "This statement has not been evaluated by the Food and Drug Administration.  This product is not intended to diagnose, treat, cure, or prevent any disease."  Moreover, a structure/function claim may not "claim to diagnose, mitigate, treat, cure or prevent a specific disease or class of diseases."  21 U.S.C. § 343(r)(6).

106.     The claims identified above suggest the use of Lipozene for weight control, weight loss, appetite suppression, and to burn stored fats.  None of these claims have been authorized by the FDA or any scientific body.

107.     To the extent that the claims identified above can be construed as structure/function claims not requiring FDA authorization or support from an authoritative scientific body, they nevertheless run afoul of DSHEA because Defendants' do not possess "substantiation" that these statements are truthful and not misleading.

108.     Lipozene is thus "misbranded" and bears a "false or misleading label" under 21 U.S.C. § 343.

**K.     Veil Piercing / Alter Ego Allegations**

109.     Defendants den Uijl and Corlett established ORI and Continuity Products for an illegal purpose:  to perpetrate fraud.  Lipozene is now their second product to utilize misleading marketing practices as a means of promoting a product that does not perform as advertised.  Defendants den Uijl and Corlett have honed their marketing tactics over time, drawing upon their prior experience to create rigged clinical studies to sell ineffective weight loss pills.  Defendants den Uijl and Corlett then employed their arsenal of false marketing and advertising tricks to sell their most successful product to date:  Lipozene.

110.     Defendants den Uijl and Corlett are liable for the conduct of ORI and Continuity Products, set forth above, because den Uijl and Corlett abused their organizational form as limited liability companies to accomplish fraudulent objects, namely, to fraudulently promote the sale of Lipozene, to conceal the proceeds of those frauds, and to frustrate the ability of victims to obtain redress for the fraud.

***Defendants den Uijl And Corlett Totally Dominate And Control ORI And Continuity Products***

111.     Defendants den Uijl and Corlett totally dominate and control ORI and Continuity Products to such an extent that the independence of ORI and Continuity Products is a sham. Together, den Uijl and Corlett are founding members of ORI and Continuity Products.  ORI is wholly-owned by den Uijl and Corlett, who also own Continuity Products and who have operated ORI and Continuity Products as their Managing Members, Presidents, and principals.  Indeed, ORI and Continuity Products are operated from premises owned by Defendants den Uijl and Corlett.

112.     Defendants den Uijl and Corlett have operated ORI and Continuity Products in a manner that there is such a unity of interest and ownership between the individual Defendants and the LLC Defendants that any sense of independence is non-existent.  In fact, Defendants den Uijl and Corlett exercise total operational control and decision-making power over all business activities at ORI and Continuity Products, including but not limited to product origination and development; product marketing, sales, and promotion; accounting and finance (Mr. den Uijl's wife, Sandra den Uijl, is also the CFO of ORI); product distribution; public and media relations; business development and strategy; vendor and third-party relationship; and contract negotiations. Defendants den Uijl and Corlett actively manage and oversee all business operations of the LLC Defendants and retain final decision-making power.

113.     And this is not den Uijl and Corlett's first rodeo.  ORI and Continuity Products are just two threads in a web of interlinked shell companies, which also operate under the ownership and control of Defendants den Uijl or Corlett for the purpose of fraudulently promoting the sale of worthless supplements:  Pounds Lost, LLC; Zylotrim, LLC; Cell Genetics, LLC; Appetrol, LLC;

Zodiac Foundation, LLC; Cyvita, LLC; Finance Marketing, LLC; Hdusdu, LLC; Beau Cheveux, LLC; and Dencor Research, LLC.  Of these interlinked companies, the following five other LLCs are registered to or operate from the same premises as Defendant ORI:  Zylotrim, LLC; Appetrol, LLC; Zodiac Foundation, LLC; and Hdusdu, LLC.

114.    From these interlinked LLCs, Defendants den Uijl and Corlett fraudulently market and promote a slew of so-called dietary and health products, including Lipozene, Cyvita, I-PAK, Excelerene, MetaboUp, Lumanex, Appetrol, Vita 26, Metabo Pro, and Pounds Lost.

***ORI And Continuity Products Were Established And Continue To Operate For A Fraudulent Purpose***

115.    Defendants ORI and Continuity Products were created by Defendants den Uijl and Corlett for the unlawful purpose of perpetrating fraud on consumers.  To date, Defendants ORI and Continuity Products have launched at least two glucomannan-based weight loss products: Propolene and Lipozene.  Defendants ORI, Continuity Products, den Uijl, and Corlett engaged in fraud with respect to both of these products by relying on rigged studies, using ineffective ingredients, and employing false and misleading advertising.  The fraudulent scheme concerning Propolene was a dress rehearsal for the main event that is the Lipozene hoax, as Propolene's fraudulent scheme has many similarities to this case.  *See supra* ¶¶ 25-31 (discussing the FTC's action against den Uijl and Corlett regarding their marketing of Propolene, another glucomannan-based weight loss product).

***Defendants den Uijl And Corlett Have Kept ORI And Continuity Products Undercapitalized***

116.    Defendants den Uijl and Corlett have used ORI and Continuity Product's organizational form to conceal their profits and income derived from their fraudulent marketing and sales of Lipozene.

117.    ORI and Continuity Products are severely undercapitalized and have been since their inception.

118.     Furthermore, Defendants den Ujil and Corlett have caused the unauthorized division of company funds and/or assets to non-company uses and/or have treated the assets of ORI and Continuity Products as their own.

119.     Moreover, failure to disregard the organizational form in this case would sanction fraud and promote injustice, since Defendants den Uijl and Corlett may abscond with the proceeds of the fraud, leaving ORI and Continuity Products insolvent and unable to satisfy any judgment that may be obtained in this action.

## CLASS ACTION ALLEGATIONS

120.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased Lipozene on or after August 10, 2012, excluding those who purchased Lipozene for resale (hereafter, the "Class").

121.     Plaintiffs also seek to represent a subclass of all Class members who purchased Lipozene in the State of California for personal, family or household purposes on or after August 10, 2012 (hereafter, the "California Subclass").

122.     Members of the Class and the California Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and California Subclass number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

123.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of Lipozene is false and misleading.

124.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendants' false and misleading marketing and promotional materials, purchased Lipozene, and suffered a loss as a result of that purchase.

125.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

126.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**(Violation Of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)**

127.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

128.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

129.     Lipozene is a consumer product as defined in 15 U.S.C. § 2301(1).

130.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

131.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

132.     In connection with the sale of Lipozene, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), by making the Express Warranties.

133.    In fact, Lipozene does not conform to the Express Warranties because each of the Express Warranties is false and misleading, and there is no competent and reliable scientific evidence supporting any of those statements.

134.    By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and Class members.

135.    Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Lipozene if the true facts had been known.

## COUNT II
### (Breach Of Express Warranty)

136.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

137.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

138.    Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that Lipozene was fit for their intended purpose by making the Express Warranties.

139.    In fact, Lipozene is not fit for such purposes because each of the Express Warranties is false and misleading, and there is no competent and reliable scientific evidence supporting any of these statements.

140.    Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Lipozene if the true facts concerning its safety and efficacy had been known.

### COUNT III

**(Breach Of The Implied Warranty Of Merchantability**)

141.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

142.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

143.     Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that Lipozene was fit for its intended purpose in that it was a safe and effective treatment for weight loss.

144.     Defendants breached the warranty implied in the contract for the sale of the Lipozene in that Lipozene could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that Lipozene is a safe and effective treatment for weight loss.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

145.     In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased Lipozene for use as a treatment for weight loss.

146.     Lipozene was not altered by Plaintiffs and Class members.

147.     Lipozene was defective when it left the exclusive control of Defendants.

148.     Defendants knew Lipozene would be purchased and used without additional testing for safety or efficacy by Plaintiffs and Class members.

149.     Lipozene was defectively designed and unfit for its intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

150.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased Lipozene if the true facts concerning its safety and efficacy had been known.

## COUNT IV

### (Unjust Enrichment)

151.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

152.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

153.    Plaintiffs and Class members conferred benefits on Defendants by purchasing Lipozene.

154.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of Lipozene.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that Lipozene was a safe and effective treatment for weight loss when in fact it was not, which caused injuries to Plaintiffs and Class members because they would not have purchased Lipozene if the true facts had been known.

155.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT V

### (Violation Of The Consumers Legal Remedies Act, Civil Code §§ 1750, *et. seq.*)

156.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

157.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendants.

158.    CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendants violated this provision by making the Misrepresentations.

159.    CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendants violated this provision by making the Misrepresentations.

160.    CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Defendants violated this provision by making the Misrepresentations.

161.    Plaintiffs and the California Subclass members suffered injuries caused by Defendants' misrepresentations because they would not have purchased Lipozene if the true facts had been known.

162.    Prior to the filing of this Complaint, CLRA notice letters were served on Defendants that complied in all respects with California Civil Code § 1782(a).  Plaintiffs Fernandez, Mendoza, and Stanley, by and through their counsel, sent Defendants letters via certified mail, return receipt requested, advising Defendants they were in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

163.    Wherefore, Plaintiffs seek all remedies available under the CLRA.

### COUNT VI

**(Violation Of The Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*)**

164.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

165.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendants.

166.    Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…."

167.    Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, FAL, FDCA, DSHEA, and the FTC's settlement with Defendants ORI, den Uijl, and Corlett in *Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (June 17, 2005).

168.    Defendants' conduct, described herein, violated the "unfair" prong of the UCL by violating the policy or spirit of the CLRA, FAL, FDCA, DSHEA, and the FTC's settlement with Defendants ORI, den Uijl, and Corlett in *Fed. Trade Comm'n v. FiberThin, LLC, et al.*, No. 05-cv-01217 (June 17, 2005).

169.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentations.

170.    Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because they would not have purchased Lipozene if the true facts concerning its safety and efficacy had been known.

## COUNT VII

### (False Advertising Law, Business & Professions Code §§ 17500, *et seq.*)

171.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

172.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendants.

173.    California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

174.    Defendants committed acts of false advertising, as defined by §17500, by making the Misrepresentations.

175.     Defendants knew or should have known, through the exercise of reasonable care that the Misrepresentations were untrue and misleading.

176.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

177.     Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because they would not have purchased Lipozene if the true facts had been known.

**PRAYER FOR RELIEF**

178.     WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.      For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and California Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and California Subclass members;

b.      For an order declaring that the Defendants' conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiffs, the nationwide Class, and the California Subclass on all counts asserted herein;

d.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper; and

h.      For an order awarding Plaintiffs, the Class, and the California Subclass their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

1    Dated:  May 16, 2013                          Respectfully submitted,

2                                                  **BURSOR & FISHER, P.A.**

3                                                  By:___*/s/ L. Timothy Fisher*_____

4                                                          L. Timothy Fisher

5                                                  L. Timothy Fisher (State Bar No. 191626)
                                                   Sarah N. Westcot (State Bar No. 264916)
6                                                  Annick M. Persinger (State Bar No. 272996)
                                                   1990 North California Boulevard, Suite 940
7                                                  Walnut Creek, CA  94596
                                                   Telephone: (925) 300-4455
8                                                  Facsimile:  (925) 407-2700
                                                   E-Mail: ltfisher@bursor.com
9                                                           swestcot@bursor.com
                                                            apersinger@bursor.com

10                                                 **BURSOR & FISHER, P.A.**
11                                                 Scott A. Bursor (State Bar No. 276006)
                                                   888 Seventh Avenue
12                                                 New York, NY  10019
                                                   Telephone: (646) 837-7150
13                                                 Facsimile:  (212) 989-9163
                                                   E-Mail: scott@bursor.com
14
                                                   *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, DeMarie Fernandez, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.      While living in California, I purchased Lipozene for personal consumer use. I read the label for Lipozene, and purchased it in reliance on the claims that Lipozene was safe and effective to reduce weight and body fat. The representations on the label were substantial factors influencing my decision to purchase Lipozene. I would not have purchased Lipozene had I known the true facts concerning its safety and efficacy.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on May 9, 2013 at Vacaville, California.

DEMARIE FERNANDEZ

I, Alfonso Mendoza, declare as follows:

1.     I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.     The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.     While living in California, I purchased Lipozene for personal consumer use.  I read the label for Lipozene, and purchased it in reliance on the claims that Lipozene was safe and effective to reduce weight and body fat.  The representations on the label were substantial factors influencing my decision to purchase Lipozene.  I would not have purchased Lipozene had I known the true facts concerning its safety and efficacy.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on April 22, 2013 at Covina, California.


_____
ALFONSO MENDOZA

I, Rhonda Stanley, declare as follows:

1.    I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.    The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.    While living in California, I purchased Lipozene for personal consumer use. I read the label for Lipozene, and purchased it in reliance on the claims that Lipozene was safe and effective to reduce weight and body fat. The representations on the label were substantial factors influencing my decision to purchase Lipozene. I would not have purchased Lipozene had I known the true facts concerning its safety and efficacy.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on May 15 , 2013 at Sacramento, California.



RHONDA STANLEY