**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         swestcot@bursor.com
         apersinger@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMARIE FERNANDEZ, ALFONSO MENDOZA, and RHONDA STANLEY, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OBESITY RESEARCH INSTITUTE, LLC, CONTINUITY PRODUCTS, LLC, WAL-MART STORES, INC., HENNY DEN UIJL, and BRYAN CORLETT,<br><br>Defendants. | Case No. 2:13-cv-00975-MCE-KJN<br>Hon. Morrison C. England, Jr.<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS**<br><br>Date: August 8, 2013<br>Time: 2:00 p.m.<br>Courtroom 7 |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

THE UNDISPUTED FACTS REGARDING COLLUSION............................................................3

    A.    The *Fernandez* Plaintiffs Brought This Motion Because They Discovered Evidence Of Collusion ..................................................................3

    B.    The Non-Walmart Defendants And Nicholas & Butler Have A Pre-Existing Relationship And An Economic Motive To Collude ..................................4

    C.    The Opposing Parties Do Not Offer Any Coherent Explanation About How The *Duran* Complaint Copies The *Fernandez* Plaintiffs' Non-Public Notice Letters.............................................................................5

    D.    The Non-Walmart Defendants Retaliated By Filing A *Doe* Suit To Harass The *Fernandez* Plaintiffs And Their Counsel Over A Purportedly Confidential Study That Has Been Publicly Available On The Internet Since 2008.....................................................................................7

LEGAL STANDARD ...............................................................................................................8

ARGUMENT ..........................................................................................................................9

    A.    The Opposing Parties' Arguments Regarding The Anti-Injunction Act And Their First Amendment Rights Are Largely Irrelevant ..............................9

    B.    The Opposing Parties Are Wrong That Plaintiffs' Requested Relief Is Inappropriate Because "The Parties Are Not Talking Settlement"............................9

CONCLUSION .....................................................................................................................10

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

i

**INTRODUCTION**

To put things simply, Plaintiffs moved for a preliminary injunction because they discovered evidence of collusion between the Non-Walmart Defendants and Nicholas & Butler, plaintiff's counsel in another class action suit concerning Lipozene, captioned *Duran v. Obesity Research Inst., LLC*, No. 37-2013-00048644-CU-BT-CTL (San Diego Superior Court May 13, 2013) ("*Duran*"). Specifically, Plaintiffs' motion describes the evidence of collusion in detail – that <u>*four paragraphs*</u> of the *Duran* complaint were copied <u>*verbatim*</u> from non-public, presuit notice letters originally sent by the *Fernandez* Plaintiffs on March 22, 2013, two months before the filing of the *Duran* complaint. See Plaintiffs' Memorandum Of Points And Authorities In Support Of Motion For Preliminary Injunction ("Plfs' Br.") at 1-3, 9-10. Among other things, the opposition briefs fail to explain how this word-for-word plagiarism could have occurred but for a collusive relationship between the Non-Walmart Defendants and Nicholas & Butler. Moreover, Plaintiffs' moving papers also describe the foundation for the collusion between the Non-Walmart Defendants and Nicholas & Butler, including the pre-existing relationship from the *Corby* case and ORI's economic motive for colluding with them in the *Duran* filing. *See Corby v. Obesity Research Inst., LLC*, No. 37-2011-00099927 (Cal. Super. Ct. Oct. 21, 2011) ("*Corby*") (prior class action against Obesity Research Institute, LLC concerning Lipozene, with Nicholas & Butler representing the plaintiff; settlement was reached within 3 months for zero monetary class relief and $90,000 in attorneys' fees).

If allowed to fester, this collusion will irreparably harm the *Fernandez* Plaintiffs and the putative class by depriving them of the independent, competent legal representation to which they are entitled. Plfs' Br. at 1. After all, *Duran*'s counsel cannot serve two masters, and the Non-Walmart Defendants should not be allowed to select their choice of attorneys for the class. Accordingly, Plaintiffs' motion seeks two forms of relief for the irreparable harm asserted here. First, the *Fernandez* Plaintiffs request that the Court enjoin the Non-Walmart Defendants and their counsel from settling the claims asserted in *Fernandez* or *Duran* prior to the appointment of interim class counsel. *Id.* Second, the *Fernandez* Plaintiffs seek an order compelling the

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

1

disclosure of all communications between the Non-Walmart Defendants and their counsel, and plaintiff Duran and his counsel. *Id.*

In fact, the opposition briefs of the Non-Walmart Defendants and plaintiff Duran (collectively, the "Opposing Parties") only bolster these allegations of collusion, largely based upon what they omit or fail to address. Strikingly, neither of the Opposing Parties actually denies that Nicholas & Butler had a copy of the *Fernandez* Plaintiffs' non-public notice letters when drafting the *Duran* complaint. *See generally* Opposition To Plaintiffs' Motion For Preliminary Injunction By Affected Third-Party Fred Duran ("*Duran* Br."); *see also* Obesity Research Institute, LLC, Continuity Products, LLC, Henny den Uijl, And Bryan Corlett's Memorandum Of Points And Authorities In Opposition To Plaintiffs' Motion For Preliminary Injunction ("ORI Br."). Worse yet, neither of the Opposing Parties even attempts to offer a coherent explanation (other than plagiarism) of how the *Duran* complaint exactly copies the content of the *Fernandez* Plaintiffs' non-public notice letters. *Id.* To be clear, in the copied paragraphs of the *Duran* complaint, 334 words out of 349 appear exactly as they do in Plaintiffs' notice letters. Plfs' Br. at 9-10. Stated otherwise, 95% of the words are the same, occurring in the same order. The odds of randomly achieving this feat are, in fact, astronomical. For example, one is more likely to encounter naturally-born quadruplets (1 set per 729,000 live births[1]) or grow to be 8-feet tall (13 individuals in medical history have reached a verified height of 8 feet[2]) than to independently reproduce the content at issue here. After 2 briefs (totaling 36 pages) and 5 declarations (totaling 80 paragraphs), it is telling that the Opposing Parties could not credibly explain the central question of how four paragraphs of the *Duran* complaint are 95% the same as the *Fernandez* Plaintiffs' presuit notice letters.

Instead, much of the Opposing Parties' briefs and declarations are devoted to bombastic, irrelevant, and at times false accounts of failed settlement discussions between counsel for the *Fernandez* Plaintiffs and the Non-Walmart Defendants. However, these are red herrings that are intended to distract the Court from the central issue of the evidence of collusion. Plaintiffs prefer

---

[1] *See* http://www.storknet.com/cubbies/multiples/odds.htm.
[2] *See* http://en.wikipedia.org/wiki/Don_Koehler.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR                             2
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

to stick to the relevant facts:  (i) the *Duran* complaint copies four paragraphs, verbatim, out of the *Fernandez* Plaintiffs' non-public presuit notice letters, (ii) the Non-Walmart Defendants and Nicholas & Butler have a pre-existing relationship from the recent *Corby* case, which was filed on October 21, 2011 and settled on January 19, 2012, (iii) the Non-Walmart Defendants and Nicholas & Butler have the same economic motive for colluding in the *Duran* filing – that is, entering into a second sweetheart settlement versus engaging in *bona fide* litigation, and (iv) neither of the Opposing Parties denies that Nicholas & Butler had a copy of the *Fernandez* Plaintiffs' non-public presuit notice letters, which were then used to draft the *Duran* complaint.

Moreover, the Opposing Parties' legal arguments similarly fall flat.  They argue that the proposed relief violates the Anti-Injunction Act and their First Amendment rights.  But these arguments only address the first type of Plaintiffs' requested relief:  an injunction against settlement negotiations in *Fernandez* and *Duran* until interim class counsel has been appointed. These arguments are not germane to the second type relief sought:  an order compelling the disclosure of communications.  Indeed, Plaintiffs' motion plainly establishes each prong of a preliminary injunction.  Plaintiffs are likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in their favor, and an injunction is in the public interest. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In sum, Plaintiffs have presented concrete evidence of collusion.  In opposition, the Opposing Parties have bombarded the Court with irrelevant briefs and self-serving declarations, none of which actually address the core allegations in Plaintiffs' motion.

## THE UNDISPUTED FACTS REGARDING COLLUSION

**A.    The *Fernandez* Plaintiffs Brought This Motion Because They Discovered Evidence Of Collusion**

This is an extraordinary set of facts.  Collusion is typically hard to demonstrate, but the *Fernandez* Plaintiffs have discovered concrete evidence:  four paragraphs of the *Duran* complaint are copied, verbatim, from Plaintiffs' non-public, presuit notice letters.  As discussed herein, there is almost no way this could have happened unless plaintiff Duran's counsel had access to a copy of

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

3

the *Fernandez* Plaintiffs' non-public notice letters, which were in the possession and control of the Non-Walmart Defendants. Plfs' Br. at 1-2, 9-10. Moreover, the Non-Walmart Defendants and Nicholas & Butler have a pre-existing relationship and a unified economic motive to collude. Such evidence, Plaintiffs argue, warrants investigative discovery. *Id.* at 1.

Plaintiffs' motion explains that on March 22, 2013, Plaintiffs' counsel sent non-public, presuit notice letters to Defendants Obesity Research Institute, LLC and Wal-Mart Stores, Inc., pursuant to the mandatory notice requirements of the California Consumers Legal Remedies Act ("CLRA"). *Id.* at 7; *see also* Cal. Civ. Code § 1782(a) ("Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall… [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by [the CLRA]."). Subsequently, Plaintiff Mendoza sent a nearly-identical letter on April 10, 2013, Plaintiff Fernandez sent a nearly-identical letter on April 24, 2013, and Plaintiffs sent a consolidated notice letter on behalf of every client on May 16, 2013. Plfs' Br. at 7.

The content of these letters were subsequently copied into the *Duran* complaint, which was filed almost two months later, on May 13, 2013. Plfs' Br. at 1-2. Because these letters were only mailed to Obesity Research Institute, LLC and Wal-Mart Stores, Inc., there is no credible way that plaintiff Duran's counsel could have access to them, other than if the letters were provided by Defendants. *Id.* And, since the Non-Walmart Defendants have the pre-existing relationship with Nicholas & Butler as well as the economic motive to work cooperatively with them, they are the prime suspects of the collusion on the Defendants' side.

**B.    The Non-Walmart Defendants And Nicholas & Butler Have A Pre-Existing Relationship And An Economic Motive To Collude**

Plaintiffs' moving papers explain that the Non-Walmart Defendants and Nicholas & Butler are well-acquainted with each other. On November 23, 2011, Nicholas & Butler filed the amended complaint in *Corby*, a class action suit against ORI in the Superior Court of California. *Corby v. Obesity Research Inst., LLC*, No. 37-2011-00099927 (Cal. Super. Ct. Nov. 23, 2011); *see also* Fisher Decl. Exh. A. On January 19, 2012, before any litigation had occurred, plaintiff Corby filed a motion for conditional approval of the settlement. *Id.* The settlement provided for $90,000 in

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR                                4
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

attorney's fees and zero monetary relief for the class.  *Id.*  Now, less than 8 months after the entry of final judgment in *Corby*, Nicholas & Butler are back.  Due to their prior interactions, Nicholas & Butler are a known quantity for ORI.[3]

Furthermore, Plaintiffs' moving papers explain that the Non-Walmart Defendants and Nicholas & Butler have an economic motive to collude:  "In the context of class action settlements, there is no formal legal priority to the first-filed case.  The only governing rule is a race to the final judgment.  The first final judgment will bind class members and the remaining cases will be barred by the doctrine of *res judicata*.  This situation creates the problem of reverse auctions, wherein the defendant can seek out the weakest adversary and either defeat him on the merits or negotiate a sweetheart settlement, then assert the resulting judgment as a *res judicata* bar against stronger cases."  Plfs' Br. at 3-4.

**C.    The Opposing Parties Do Not Offer Any Coherent Explanation About How The *Duran* Complaint Copies The *Fernandez* Plaintiffs' Non-Public Notice Letters**

In their brief, the Non-Walmart Defendants make no attempt to coherently explain how the *Duran* complaint copies, verbatim, Plaintiffs' notice letters.  Instead, their brief devotes *five pages* to the argument that Plaintiffs' notice letters incorporated representations found in publicly-available sources.  *See* ORI Br. at 9-13.  This is a red herring that cannot explain all of the exact similarities at issue here.  In fact, it is true that Plaintiffs' notice letters quoted actual product misrepresentations, which were made on the Lipozene product packaging, Lipozene website, and Lipozene television commercial.  *Id.*  But this is required in a consumer class action case based on breach of warranty and false advertising claims.  Obviously, Plaintiffs' notice letters would reference the actual misrepresentations used in Lipozene's advertising.

The Non-Walmart Defendants then argue that Plaintiffs' counsel knew about a previous case against Lipozene when drafting Plaintiffs' notice letters, *Corby v. Obesity Research Inst.,*

---

[3] Plaintiffs note that considering the relatively modest attorneys' fees that Nicholas & Butler earned from the *Corby* settlement, it would seemingly not make economic sense for the firm to litigate these claims again.
Additionally, in its final approval opinion, the *Corby* court noted that Nicholas & Butler had purportedly received "factual support for certain medical claims" regarding the efficacy of Lipozene. [Dkt. 39-2] at 18.  It is curious that the same law firm has now decided to sue the same defendants for the same product, despite no additional developments that would cast doubt on Lipozene's efficacy.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

5

*LLC*, No. 37-2011-00099927 (San Diego Superior Court Oct. 21, 2011) ("*Corby*").  Again, this is irrelevant and cannot explain the copying.  During their extensive presuit investigation, counsel for the *Fernandez* Plaintiffs had, in fact, reviewed the prior lawsuits against ORI before drafting their clients' notice letters.  Of course, this is the diligent thing to do.  But it stretches the imagination to ascertain how the *Fernandez* Plaintiffs' thorough presuit investigation explains the evidence of suspected collusion, as manifested in the *Duran* filing.[4]

Next, the Non-Walmart Defendants argue that Plaintiffs' CLRA notice letters were not, in fact, "non-public" because Plaintiffs' counsel purportedly sent them to Julio Velez, a former employee, and Innotrac, which the Non-Walmart Defendants characterize as "an incredibly large company."  *See* ORI Br. at 13.  That is misleading.  In fact, prior to May 16, 2013, the day of filing the *Fernandez* Complaint, Plaintiffs' counsel had mailed each notice letter to only 3 locations:  the principal place of business of Wal-Mart Stores, Inc., the address printed on each bottle of Lipozene, and the address for service of process that ORI had registered with the California Secretary of State (which actually resulted in each Plaintiffs' notice letter being returned as undeliverable).  *See* Fisher Decl. ¶ 2.  This was, literally, the bare minimum necessary to effectuate notice under the CLRA, given that ORI registered an incorrect address for service of process with the California Secretary of State.  Plaintiffs' counsel did not send these letters to any other address prior to May 16, 2013, and they had never heard of Innotrac or Julio Verez until being informed by ORI.  *Id.* ¶ 2.

What <u>is</u> relevant is that four paragraphs – and 334 out of 349 words – of the *Duran* complaint were copied <u>verbatim</u> from Plaintiffs' non-public notice letter, and the Opposing Parties have offered no credible explanation how this could have occurred, absent collusion.  In fact, the probability of arriving at that same sequence of words is a staggering 1 in 1.7 x $10^{1,748}$ odds, and

---

[4] Joshua Weiss is correct in his declaration that at the end of settlement negotiations, Mr. Marchese misspoke that "neither he nor anyone at his firm had heard of [Nicholas & Butler] until May 16, 2013." [Dkt. 37-15] ¶ 27.  In fact, Mr. Marchese's associate, Neal Deckant, had researched prior lawsuits against ORI when drafting the *Fernandez* complaint.  During this research, Mr. Deckant had read the *Corby* action, which was brought by Nicholas & Butler.  Mr. Deckant discussed his research with Mr. Marchese, but he did not communicate the fact that Nicholas & Butler (who neither Mr. Deckant nor Mr. Marchese had previously heard of) was plaintiff's counsel in *Corby*.  Nor was this a relevant factor at that time.  Otherwise, Mr. Marchese was accurate that nobody at Bursor & Fisher had heard of Nicholas & Butler until May 16, 2013.  *See* L. Timothy Fisher Decl. ¶ 3.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

6

probability of arriving at the same sequence of characters is 1 in 8.8 x $10^{2,621}$ odds.[5]  These odds are literally astronomical.[6]  The only sensible explanation is that plaintiff Duran's counsel was given a copy of Plaintiffs' notice letters.

Tellingly, the Opposing Parties *do not deny* that Nicholas & Butler had access to a copy of Plaintiffs' non-public notice letters prior to drafting the *Duran* complaint.  For example, the Declaration Of Joshua Weiss contains 28 paragraphs, out of which 25 chronicle failed settlement negotiations between ORI and the *Fernandez* Plaintiffs.  [Dkt. 37-15].  Similarly, the Declaration Of Craig Nicholas has 21 paragraphs, of which 12 discuss his professional qualifications.  [Dkt. 38-2].  However, none of these briefs or declarations actually denies that Nicholas & Butler had a copy of Plaintiffs' notice letters (nor do the declarations of Scott Ferrell, Alex Tomasevic, or Fred Duran).

**D.  The Non-Walmart Defendants Retaliated By Filing A *Doe* Suit To Harass The *Fernandez* Plaintiffs And Their Counsel Over A Purportedly Confidential Study That Has Been Publicly Available On The Internet Since 2008**

There is another fact that the *Fernandez* Plaintiffs must bring to the Court's attention, as it is addressed in ORI's brief.  *See* ORI Br. at 8.  In their Complaint, the *Fernandez* plaintiffs allege that ORI advertises that Lipozene is "clinically proven to help you lose pure body fat" based on an eight-week "major university double-blind study," which is referenced on the Lipozene packaging, on the Lipozene website, and on a nationwide television commercial.  *See* Class Action Complaint ("Compl.") ¶¶ 8, 12-14, 32, 44, 47, 58, 59, 61, 65, 91 [hereinafter the "Lipozene Study"].  However, the *Fernandez* Plaintiffs explain that the Lipozene Study is "rigged and defective" and actually "disproves the efficacy of Lipozene."  *See id.* ¶¶ 34-42.

On June 11, 2013, Scott Ferrell of Newport Trial Group, counsel for ORI, sent a letter to Bursor & Fisher, P.A. stating that "it was patently improper for the Complaint in *Fernandez* to

---

[5] These calculations assume that there are 26 English characters and 171,476 words in current use.  *See generally How Many Words Are There In The English Language?*, Oxford Dictionaries, http://oxforddictionaries.com/us/words/how-many-words-are-there-in-the-english-language (last visited June 13, 2013).

[6] For reference, there are only 7 x $10^{22}$ stars in the known universe, and there are only $10^{82}$ atoms in the known universe.  *See Star Survey Reaches 70 Sextillion*, CNN, http://www.cnn.com/2003/TECH/space/07/22/stars.survey/ (last visited June 13, 2013); *see also Atoms In The Known Universe*, Universe Today, http://www.universetoday.com/36302/atoms-in-the-universe/ (last visited June 13, 2013).

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

7

assert allegations based on the Study." *See* Fisher Decl. Exh. B.  Mr. Ferrell also demanded that Bursor & Fisher "destroy any copies that they have of the study, agree not to rely on the Study for any purpose, and agree to cooperate with Newport Trial Group/Defendants in taking any other measures which may be necessary to remedy disclosure of the Study." *See id.*

Then, on June 28, 2013, ORI filed a *Doe* suit in state court, alleging misappropriation of the Lipozene Study and violation of California's Uniform Trade Secrets Act and Unfair Competition Law.  *See id.* Exh. C.  A mere five days later, ORI served a subpoena for a deposition of the PMK of non-party Bursor & Fisher, P.A.  *See id.* Exh. D.  Thereafter, ORI served subpoenas for the depositions of DeMarie Fernandez, Alfonso Mendoza, and Rhonda Stanley, who are non-parties in the *Doe* suit but named plaintiffs in this case.  *Id.*  ORI also seeks the production of documents such as "Any Documents Or Communications Relating To how You or Any Person obtained the Confidential Research Study."  *Id.*

But, notably, the Lipozene Study is publicly available in its entirety.[7]  Moreover, the study's Abstract was publicly available since November 2008, when it was uploaded to DocStoc.com by a user named "bloved" and prominently labeled as "Public Domain."[8]  *See* Fisher Decl. Exh. E.  Accordingly, these subpoenas were intended to intimidate and harass the *Fernandez* Plaintiffs and their counsel.

On July 19, 2013, the *Fernandez* Plaintiffs moved for a protective order to prevent the depositions from going forward, and for sanctions.  *Id.*  Exhs. F, G.  After an *ex parte* hearing on July 23, 2013, Judge Randa Trapp ordered that the depositions be stayed until she rules on the motion for a protective order in November.  The *Fernandez* Plaintiffs are confident that Judge Trapp will grant the motion and award sanctions for ORI's abuse of the discovery process.

## **LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[7] *See* http://www.clinicalstudiespublishing.com/pdf/supplemental/randomized-double-blinded-placebo-controlled-study.pdf (last visited July 18, 2013).
[8] *See* http://www.docstoc.com/docs/2411719/A-Randomized-Double-Blinded-Placebo-Controlled-Study-of (last visited July 18, 2013).

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

8

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. at 20.  A stronger showing of one element may offset a weaker showing of another, but all four elements must be present.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011); *see also Farmers Ins. Exch. V. Steele Ins. Agency, Inc.*, 2013 WL 2151553, at *4-5 (E.D. Cal. May 16, 2013).

## ARGUMENT

### A. The Opposing Parties' Arguments Regarding The Anti-Injunction Act And Their First Amendment Rights Are Largely Irrelevant

The majority of the Opposing Parties' legal arguments are that an injunction would violate the Anti-Injunction Act, and it would violate their First Amendment rights.  *See* ORI Br. at 16-17; Duran Br. at 13-16.  But as an equitable matter, any such settlement would be the product of unclean hands – this cannot possibly be within the scope of the Anti-Injunction Act or plaintiff Duran's First Amendment rights.  Moreover, Plaintiffs' requested relief is plainly consistent with the text of the Anti-Injunction Act, because it will not "stay proceedings in a state court," and it will not "effectuate [the state court's] judgments."  28 U.S.C. § 2283.  Plaintiffs merely request time to ensure that the putative class' interests are independently represented.  Furthermore, the Opposing Parties' arguments are only relevant to the first form of relief sought:  an injunction against settlement negotiations prior to the appointment of interim class counsel.  *See* Plfs' Br. at 1. They are not relevant to the second form of relief sought:  an order compelling the disclosure of all communications between the Non-Walmart Defendants and their counsel, and plaintiff Duran and his counsel.  *Id.*  These arguments have no bearing on Plaintiffs' request for investigative discovery into the alleged collusion.

### B. The Opposing Parties Are Wrong That Plaintiffs' Requested Relief Is Inappropriate Because "The Parties Are Not Talking Settlement"

The Opposing Parties then argue that Plaintiffs' requested relief is inappropriate because "Defendants' counsel has had no settlement discussion with counsel for *Duran*" as of July 25, 2013.  ORI Br. at 15.  Similarly, the Opposing Parties argue that Plaintiffs cannot establish the "irreparable harm" prong for a preliminary injunction, because such considerations are "speculative" since "no settlement discussions have even occurred."  *Id.* at 18.  Moreover, the

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

9

Opposing Parties argue that "the San Diego Superior Court would need to assess the fairness and reasonableness of [any] settlement." *Id.* at 18 n. 20.

These arguments miss the mark. Indeed, Plaintiffs have already addressed each of these points in their moving papers:

> A collusive relationship between purported adversaries taints every aspect of the litigation, including but not limited to the independence of counsel, the competence of counsel, the preparedness of counsel, and the level of zealous advocacy employed—including the willingness of counsel to try the case. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)…
>
> Regarding the potential for a collusive settlement, it is little comfort that any classwide settlement will require court approval after-the-fact, since there is evidence of collusion here from the very beginning… Moreover, though the court has a duty to review a settlement for evidence of collusion prior to granting its approval, courts will presume an absence of collusion. *See Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'") (quoting Newberg on Class actions § 11.51 at 158-59 (4th ed. 2002)). Here, however, the Court would be remiss to set aside the evidence of collusion provided herein and to delay the investigation into the harm to the class until a collusive settlement has already been made.
>
> Moreover, a review of a settlement by a state court judge in the *Duran* action is inadequate to address the concerns raised here because "fairness" is not a binary consideration. That is, settlements are more complex than being "fair" or "unfair." Collusive behavior between defense counsel and plaintiff Duran's counsel ensures that the class will be confined to the worst approvable settlement possible. Conducting bona fide settlement negotiations between independent, adversarial counsel would result in more favorable terms for the class, but there is no way to account for this in the context of preliminary or final approval hearings.

Plfs' Br. at 17.

## **CONCLUSION**

For the forgoing reasons, Plaintiffs' motion for a preliminary injunction should be granted. Plaintiffs presented the court with evidence of collusion, which the Opposing Parties did not attempt to refute. Investigative discovery is warranted.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

10

Dated:   August 1, 2013

Respectfully Submitted,

By: ___*/s/ Annick M. Persinger*___
        Annick M. Persinger

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:   (925) 407-2700
E-Mail: ltfisher@bursor.com
       swestcot@bursor.com
       apersinger@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION TO COMPEL DISCLOSURE OF COMMUNICATIONS
CASE NO. 13-CV-00975-MCE-KJN

11