1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   DEMARIE FERNANDEZ, ALFONSO            No.  2:13-cv-00975-MCE-KJN
     MENDOZA, and RHONDA STANLEY,
12   on behalf of all others similarly situated,

13              Plaintiffs,                 **MEMORANDUM AND ORDER**

14         v.

15   OBESITY RESEARCH INSTITUTE,
     LLC, CONTINUITY PRODUCTS LLC,
16   WAL-MART STORES, INC., HENNY
     DEN UIJL, and BRYAN CORLETT,
17
                Defendants.
18

19

20         Plaintiffs DeMarie Fernandez ("Fernandez"), Alfonso Mendoza ("Mendoza") and

21   Rhonda Stanley ("Stanley") (collectively referred to as "Plaintiffs") brought an action

22   against Obesity Research Institute ("ORI"), Continuity Products ("CP"), Wal-Mart Stores

23   ("Wal-Mart"), Henny den Uijl ("Uijl") and Bryan Corlett ("Corlett") (collectively referred to

24   as "Defendants") alleging the following causes of action: (1) Violation of the Magnuson-

25   Moss Warrant Act ("MMWA"); (2) Breach of Warranty; (3) Breach of the Implied

26   Warranty of Merchantability; (4) Unjust Enrichment; (5) Violation of Consumers Legal

27   Remedies Act ("CLRA"); and (6) Violation of the Unfair Competition Law.

28   ///

                                           1

1  Several motions are pending before the Court including: (1) Defendants' Motions to

2  Dismiss (ECF Nos. 10 and 12); (2) Defendants' Motion to Change Venue (ECF No. 20);

3  (3) Defendants' Motion to Stay (ECF No. 21); (4) Plaintiffs' Motion to Appoint Class

4  Counsel (ECF No. 26); and (5) Plaintiffs' Motion for Preliminary Injunction (ECF No. 29.)[1]

5  For the reasons discussed below, the Court DENIES Defendants' Motion to Change

6  Venue (ECF No. 20) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 29).  The

7  Court GRANTS Defendants' Motion to Stay (ECF No. 21).[2]  Because the Court granted

8  Defendants' Motion to Stay, the remaining motions are denied without prejudice.

9

10  **BACKGROUND[3]**

11

12       The facts are generally as follows, Plaintiffs bought Defendants' product,

13  Lipozene, which Defendants market as a "weight loss breakthrough" that will "get rid of

14  pounds of body fat without a change in lifestyle."  In reality, Lipozene's primary ingredient

15  is konjac root, which is a form of dietary fiber that does not "get rid of pounds of body fat"

16  as promised.  Plaintiffs allege that Defendants knew the product was ineffective for

17  weight loss, but they intentionally marketed Lipozene with false and misleading

18  representations about its effectiveness for weight loss anyways.

19       More specifically, Plaintiff Fernandez lives in Vacaville, California.  In late 2012,

20  Fernandez bought Lipozene from a Wal-Mart store in Vacaville, California.  The

21  container she bought stated that Lipozene was safe and effective and that it was

22  clinically proven to reduce weight and body fat.

23  ///

24  _____

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

25

26  [2] For the purposes of this Order, when the Court refers to Defendants, it is referring to the Non-Wal-Mart Defendants.  Wal-Mart filed a Motion to Dismiss (ECF No. 10), but it did not join any of the other

27  defense motions.  Because the Court granted the stay, it dismissed Wal-Mart's Motions to Dismiss (ECF No. 10) without prejudice.

28  [3] The facts are taken, sometimes verbatim, from Plaintiffs' Complaint.  (ECF No.1.)

1  Fernandez bought Lipozene because she believed it would help her lose weight, but

2  after using it for several weeks, she concluded Lipozene was ineffective.

3       Plaintiff Mendoza lives in Covina, California.  In February 2013, Mendoza bought

4  three bottles of Lipozene through ORI's toll-free number after watching a television

5  advertisement about the product.  The containers Mendoza bought included an image of

6  a Lipozene pill dissolving body fat with a caption that states "78% of weight lost is pure

7  body fat."  Mendoza bought the product because he believed it would help him lose

8  weight, but soon concluded that it was worthless.

9       Plaintiff Stanley lives in Dublin, California.  In late 2012, Stanley bought two

10  bottles of Lipozene from a Wal-Mart store in Maysville, California.  Stanley bought

11  Lipozene because Stanley believed it would help her lose weight, but several weeks

12  after using it as directed, Stanley concluded it was worthless.

13

14                                    **ANALYSIS**

15

16       **A.    Motion to Change Venue**

17

18       "For the convenience of parties and witnesses, in the interest of justice, a district

19  court may transfer any civil action to any other district or division where it might have

20  been brought."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the

21  waste of time, energy, and money and to protect litigants, witnesses and the public

22  against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S.

23  612, 616 (1964) (internal quotation marks omitted).  On a motion to transfer venue, the

24  moving party must make "a strong showing of inconvenience to warrant upsetting the

25  plaintiff's choice of forum."  Hope v. Otis Elevator Co., 389 F. Supp. 2d 1235, 1243 (E.D.

26  Cal. 2005) (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843

27  (9th Cir. 1986)).

28  ///

1   The Court has discretion in deciding whether such transfer is warranted based on an

2   "individualized, case-by-case consideration of convenience and fairness." Van Dusen,

3   376 U.S. at 622.

4          Once the court determines a case could have been brought before the proposed

5   transferee court, it must consider a number of private and public factors relating to the

6   interests of the parties and the judiciary.  For example, the court may consider: (1) the

7   plaintiff's choice of forum; (2) respective parties' contacts with the forum; (3) contacts

8   relating to the plaintiff's cause of action in the forum; (4) the cost of litigation in either

9   forum; (5) the ease of access to sources of proof; (6) the complexity of the governing

10  law; (7) the availability of compulsory process to compel attendance of unwilling

11  non-party witnesses; and (8) other factors that, in the interest of justice, impact the

12  convenience or fairness of a particular venue.  Jones v. GNC Franchising, Inc., 211 F.3d

13  495, 498–99 (9th Cir. 2000).

14         Defendants argue that the U.S. District Court for the Southern District ("Southern

15  District")  is a more convenient forum because: (1) OPI's and CP's principal place of

16  business is in San Diego County which is located in the Southern District; (2) all

17  business decisions related to this case were made in San Diego County; (3) ORI's and

18  CP's businesses would be disrupted without a transfer because ORI, CCP, Uijl, Corlett,

19  and their staff would be required to travel to the United States District Court for the

20  Eastern District of California ("Eastern District"); and (5) all of ORI's and CP's business

21  records are located in San Diego County.  (ECF No. 20).  Defendants also argue that

22  only two of the three named Plaintiffs live in the Eastern District; Mendoza lives in the

23  Central District of California which Defendants insist is closer to the Southern District of

24  California.  Further, Defendants argue that if this action is certified as a class action, it

25  will include Plaintiffs from all over the country. Id.  Plaintiffs argue the opposite.

26  Plaintiffs argue that transferring the case shifts the inconvenience from Defendants to

27  Plaintiffs. (ECF No. 26).

28  ///

4

1    Venue is proper in the Eastern District because a substantial part of the events

2    occurred within the Eastern District.  28 U.S.C. § 1391 (b)(2) (West).  Both Stanley and

3    Fernandez live in the Eastern District, and both Plaintiffs bought Lipozene at Wal-Mart

4    stores in the Eastern District.  Defendants insist that the Eastern District is extremely

5    inconvenient for them even though they are located in the Southern District within the

6    same state, not across the county.  To date, Defendants have not appeared in the

7    Eastern District despite filing several motions because in the Digital Age most litigation

8    occurs electronically.  Physical location means less when electronic filing is available.

9    Both Defendants and Plaintiffs filed their motions electronically.  Similarly, Defendants

10   allege that discovery will be burdensome because sources of proof are located in the

11   Southern District.  The "ease of access to sources of proof" is an outdated factor, as

12   most discovery will be conducted electronically and the "physical location" of electronic

13   records is irrelevant.  Plaintiffs are properly before this Court, and the Court will not grant

14   Defendants' Motion to Change Venue to make this action tougher on Plaintiffs.

15   Defendants' Motion to Change Venue (ECF No. 20) is DENIED.

16

17           B.    Motion for Preliminary Injunction

18

19           The purpose of a preliminary injunction is to preserve the relative positions of the

20   parties—the status quo—until a trial on the merits can be conducted.  LGS Architects,

21   Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting Univ. of

22   Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  "'A preliminary injunction . . . is not a

23   preliminary adjudication on the merits but rather a device for preserving the status quo

24   and preventing the irreparable loss of rights before judgment.'"  U.S. Philips Corp. v. KBC

25   Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting Sierra On–Line, Inc. v. Phoenix

26   Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)).

27   ///

28   ///

1    A plaintiff seeking a preliminary injunction must establish: (1) he is "likely to

2    succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of

3    preliminary relief"; (3) "the balance of equities tips in his favor"' and (4) "a preliminary

4    injunction is in the public interest."   Winter v. Natural Res. Defense Council, 555 U.S. 7,

5    20 (2008)); see also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052

6    (9th Cir. 2009) (adopting the preliminary injunction standard articulated in Winter).   "If a

7    plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its

8    request must be denied."   Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207

9    (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22).   "In each case, courts must balance the

10   competing claims of injury and must consider the effect on each party of the granting or

11   withholding of the requested relief."   Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v.

12   Vill. of Gambell, AK, 480 U.S. 531, 542 (1987)).

13   Alternatively, under the so-called sliding scale approach, as long as the plaintiff

14   demonstrates the requisite likelihood of irreparable harm and shows that an injunction is

15   in the public interest, a preliminary injunction can still issue so long as serious questions

16   going to the merits are raised and the balance of hardships tips sharply in the plaintiffs'

17   favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

18   (concluding that the "serious questions" version of the sliding scale test for preliminary

19   injunctions remains viable after Winter).

20   A "preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren,

21   553 U.S. 674, 690 (2008).  Thus, a district court should enter a preliminary injunction

22   only "upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at

23   21 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

24   ///

25   ///

26   ///

27   ///

28   ///

6

1    Plaintiffs' Motion for Preliminary Injunction asks the Court (1) to enjoin the

2    non-Wal-Mart Defendants and their counsel from negotiating any class wide settlement

3    of the claims asserted in this case prior to the appointment of interim class counsel and

4    (2) to compel the disclosure of any communications they have had with Plaintiff's

5    counsel in <u>Duran v. Obesity Research Inst., LLC</u>, No. 37-2013-00048664-CU-BT-CTL

6    (San Diego Superior Court, May 13, 2013) ("Duran") (ECF No. 29).  Duran is a state

7    action that is similar to the case at hand.  Duran and the putative class members allege

8    that they purchased Lipozene and that it is not effective for weight loss.  Generally,

9    Plaintiffs allege that Nicholas & Butler, the firm representing Duran, is in collusion with

10   Defendants to keep the settlement low.  (<u>Id.</u>)  Plaintiffs theorize that Defendants intend to

11   enter into a collusive, sweetheart settlement with Duran's counsel which would

12   extinguish Plaintiffs' claims.

13       Plaintiffs' theory goes as follows.  On May 13, 2013, Nicholas & Butler filed the

14   Duran action in San Diego Superior Court.  Three days later, Plaintiffs filed this case, but

15   the Duran complaint copied the non-public, pre-suit CLRA letter Plaintiffs sent

16   Defendants on March 22, 2013.  (ECF No. 29-1 at 11.)[4]  Further, the named Plaintiff in

17   the Duran Complaint works less than a mile from CP.  (<u>Id.</u> at 7.)  The firm representing

18   Duran, Nicholas & Butler, settled a previous case with similar facts against ORI in

19   October 2011 ("October 2011 settlement").  (<u>Id.</u> at 10.)  The October 2011 settlement

20   provided for $90,000 in attorney's fees and zero monetary relief for the class.  (<u>Id.</u> at 10.)

21   Plaintiffs allege that the October 2011 settlement is evidence that neither Nicholas &

22   Butler nor Duran have the classes' best interest at heart.  Plaintiffs also posit that

23   collusion is evident based on Defendants' decision to vigorously litigate the case

24   pending in this Court while simultaneously filing the bare minimum in San Diego Superior

25   Court.  (ECF No. 29.)

26   ///

27   _____

28   [4]Plaintiffs included a chart which demonstrates the similarities between the letter and the
Complaint.  (ECF No. 29-1. at 13.)

1    In contrast, Defendants argue that Plaintiffs contentions "can only be described as

2    brazen and conspiratorial."  (ECF No. 37 at 10.)  Defendants argue that they tried to

3    settle this lawsuit with Plaintiffs, but settlement negotiations fell apart when Plaintiffs'

4    attorneys refused to accept anything less than $750,000 in attorneys' fees.  (Id. at

5    11-16.)  Defendants argue that Plaintiffs do not care about the class and that they are

6    only motivated by attorneys' fees.  Defendants also profess that Plaintiffs' counsel

7    threatened "World War III" and that "he would fight to the death" if Defendants would not

8    settle.  (Id.) Defendants allege that Plaintiffs' CLRA letter plagiarized their complaint in

9    the case that settled against ORI in October 2011.[5]

10    Plaintiffs failed to establish the Winter factors which are necessary hurdles to

11    obtaining a preliminary injunction.  Winter, 555 U.S. at 20.  First, Plaintiffs failed to make

12    any arguments that they were likely to succeed on the merits; therefore, this element

13    cannot be met.

14    Second, Plaintiffs will not suffer irreparable, imminent harm.  Plaintiffs allege that

15    "amicable litigation" between Defendants and Duran deprives the class of independent,

16    competent legal representation which will result in a less favorable settlement for

17    Plaintiffs. (ECF No. 29-1.)  Defendants argue that Plaintiffs cannot show irreparable,

18    imminent harm because Plaintiffs provided no evidence that Duran and Defendants are

19    engaged in settlement negotiations.  In its filings, Defendants attest that they have not

20    engaged in any settlement negotiations with Duran.  The Court is not aware of any

21    evidence that Duran and Defendants are on the brink of a settlement.  Plaintiffs' alleged

22    harm can be described as speculative and possible at best.

23    Finally, the balance of equities does not tip in Plaintiffs' favor and an injunction is

24    not in the public's interest.  Plaintiffs argue that they are the lawyers who "care" about

25    getting the class the best settlement.  Plaintiffs also suggest that the Duran lawyers

26    threaten the integrity of the American legal system by engaging in amicable litigation.

27    (ECF No. 29-1 at 22.)

28    _____
[5]Defendants included a chart showing the similarities.  (ECF No. 37 at 17.)

1    Defendants claim that an injunction would only enable Plaintiffs' attorneys to receive

2    attorneys' fees and that if Plaintiffs' are "really" concerned about a bad settlement they

3    can file objections if and when a settlement occurs.  (ECF No. 37.)  In class actions,

4    there is a race to final judgment because a final judgment will bind class members and

5    the remaining classes will be barred by the doctrine of res judicata.  John C. Coffee, Jr.,

6    Class Wars: The Dilemma of the Mass Tort Class Action, 95 Colum. L. Rev. 1343,

7    1370-73 (1995).  Only the first set of lawyers to settle a case that affects a class will be

8    awarded attorneys' fees; thus, Plaintiffs' attorneys and Duran's attorney share the same

9    motivation.  The Court does not pick sides; it will not issue an "extraordinary remedy" to

10   ensure that one set of attorneys recover fees to the detriment of another set of attorneys.

11   Lastly, Plaintiffs failed to provide any precedent for the Court to order the Duran lawyers

12   to disclose all communication they have had with Defendants.  Accordingly, Plaintiffs

13   failed to meet their burden to obtain a preliminary injunction and their Motion is DENIED

14   (ECF No. 29).

15

16        **C.    Motion to Stay**

17

18        The power to stay proceedings is "incidental to the power inherent in every court

19   to control the disposition of the cases on its docket with economy of time and effort for

20   itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  A

21   federal district court has broad discretion in deciding whether to issue a stay, and the

22   court's decision will not be reversed unless it has abused its discretion. Fed. Sav. & Loan

23   Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989).  Indeed, "[a] trial court may,

24   with propriety, find it is efficient for its own docket and the fairest course for the parties to

25   enter a stay of an action before it, pending resolution of independent proceedings which

26   bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir.

27   1979).  This rule "does not require that the issues in such proceedings are necessarily

28   controlling of the action before the court." Id. at 863-64.

1   Nonetheless, "[w]here it is proposed that a pending proceeding be stayed, the competing

2   interests which will be affected by the granting or refusal to grant a stay must be

3   weighed." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). "Among these

4   competing interests are the possible damage which may result from the granting of a

5   stay, the hardship or inequity which a party may suffer in being required to go forward,

6   and the orderly course of justice measured in terms of the simplifying or complicating of

7   issues, proof, and questions of law which could be expected to result from a stay." Id.

8   (citing Landis, 299 U.S. at 254-55).

9       Here, Duran filed his case against ORI three days before Plaintiffs filed this case.

10   (ECF No. 36 at 6.)  The Court is concerned that it and San Diego Superior Court may

11   reach different conclusions on identical issues if the cases proceed simultaneously.

12   Most of Plaintiffs' claims are state-law claims.  The only federal claim, the MMWA claim,

13   is rooted in state law.  A MMWA claim cannot proceed unless Plaintiffs successfully

14   plead a state warranty claim. Gertz v. Toyota Motor Corp., 2011 WL 3681647, *6 (C.D.

15   Cal. 2011).  Thus, California law will determine how this case is resolved.  Applying

16   California law is the norm in a San Diego Superior Court.  The Court is not persuaded by

17   Plaintiffs' counsel's argument that Plaintiffs will be damaged if the Court grants a stay.

18   Plaintiffs contend that if San Diego Superior Court reaches a decision in Duran before

19   this Court, Plaintiffs will "be stuck with" the deal that the Duran lawyers struck.  This

20   scenario does not provide for inevitable harm to anyone and only possibly harms

21   Plaintiffs' attorneys.  Which attorneys are awarded fees is not a part of the Court's

22   calculus in determining how to manage its docket.

23       Next, the Court considers the hardship or inequity which a party may suffer in

24   being required to go forward. Landis, 299 U.S. at 254–55.  If the case were to proceed,

25   Defendants argue that it would create a substantial risk of duplicative litigation costs,

26   hearings, and discovery while the only hardship Plaintiffs would face is a delay.  (ECF

27   No. 21.)  Plaintiffs oppose a stay and accuse the Defendants of forum shopping.  (ECF

28   No. 36.)

1    It is clear to the Court that Defendants do not want to proceed in the Eastern District

2    based on their Motion to Change Venue ( ECF No. 20).  Again, in Defendants' Motion to

3    Stay, they reiterate that the Eastern District is an inconvenient forum.  Defendants are

4    located in San Diego; thus, San Diego Superior Court would certainly be closer to them.

5    As discussed above, the Court is not sympathetic to an intrastate party complaining

6    about appearing in a District where electronic filing is the norm.  However, the Plaintiffs

7    have failed to provide the Court with evidence that Defendants desire to litigate in the

8    San Diego is anything more than a desire to defend a suit in their "home" jurisdiction

9    because it is convenient for them.

10          Lastly, the Court considers the orderly course of justice measured in terms of

11   simplifying or complicating of issues, proof, and questions of law which could be

12   expected to result from a stay.  Landis, 299 U.S. at 254–55.  Plaintiffs argue that a stay

13   would not simplify the case because the cases are not similar; however, Plaintiffs do

14   acknowledge that both cases are generally "consumer protection claims based on

15   alleged false advertising."  (ECF No. 36.)  Uijl, Corlett, and CP are not defendants in the

16   Duran case.  Defendants argue that all the pertinent issues regarding the false

17   advertising of Lipozene can be decided in Duran and then simplified for this Court.  After

18   considering all the factors including the fact that "[j]udges in the Eastern District of

19   California carry the heaviest caseloads in the nation," the Court does not believe it's a

20   wise use of judicial resources to duplicate the San Diego Superior Court's effort and

21   possibly issue a conflicting decision.   Stockdale Office Ltd. Partnership v. Moreland,

22   2013 WL 1966566 (E.D. Cal. May 10, 2013).  Thus, Defendants' Motion to Stay (ECF

23   No. 21) is GRANTED.

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

For the reasons discussed above, the Court DENIES Defendants' Motion to Change Venue (ECF No. 20) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 29). The Court GRANTS Defendants' Motion to Stay (ECF No. 21). Further proceedings in this Court are STAYED pending the resolution of <u>Duran v. Obesity Research Inst., LLC</u>, (Case No. 37-2013-00048664-CU-BT-CTL) by the San Diego Superior Court. Not later than ten (10) days after the proceedings are concluded in the Duran action, Defendants are directed to inform this Court of the status of this case and move to lift the stay. In light of this ruling, the Court DENIES Defendants' Motions to Dismiss (ECF Nos. 10 and 12) and Plaintiffs' Motion to Appoint Class Counsel (ECF No. 26) without prejudice and directs the parties to refile their motions when the stay is lifted, if the parties choose to do so.

IT IS SO ORDERED.

Dated: August 28, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

12